COMMONWEALTH OF PUERTO RICO
FEDERAL COURT
SAN JUAN, PUERTO RICO

| | |
|---|---|
| ALASKA AIR & SOUND CENTER, WILLIAM MCGRAW, ALMA ROSA MORALES COLON (WIFE), AND THE MARRIAGE SOCIETY CREATED BY PARTIES; AND EMPLOYEE GROUP COMPOSED BY; JESUS J. ROSARIO COLON; ARNOLD DAVID ALVARADO; ISRAEL MALDONADO DIAZ, BRENDA LOPEZ MARTINEZ (WIFE) AND THE SOCIETY CREATED BY PARTIES; RAMON ORTIZ VARGAS, EMMANUEL MARTINEZ DE JESUS, ARLEEN DIAZ APONTE (WIFE) AND THE SOCIETY CREATED BY PARTIES; JOSE R. SANTIAGO JIMENEZ; MIGUEL ANGELROLON RENTAS; MARCOS G. COLON CRUZ; ARNALDO L. MORALES CORREA; REINALDO DAVID BURGOS; JOSE R. ORTIZ VAZQUEZ Y ROLANDO CRUZ ARROYO; group of clients represented By: ANDREA COLÓN BEVERAGGI, REINALDO RODRÍGUEZ BÁEZ, YAHAIRA YAHAIRA BARGASARAWARA, WILLIAM ARROFAT, LIZA CRUZ DÍAZ, HÉCTOR CASTRO<br><br>**PLAINTIFFS**<br><br>WELLS FARGO FINANCIAL; INSURANCE COMPANY OF (UNKWON NAME)<br><br>**DEFENDANTS** | CIVIL CASE NUM.:<br><br>07-1106 (ADC)<br><br>RE: BRIDGE OF CONTRACT DAMAGES, UNFAIR COMPETITION THRUTH IN LENDING<br><br> |

PETITION / COMPLAINT

**HONORABLE FEDERAL COURT:**

The undersigned lawyer appears to this Court, as the legal representative of the plaintiff, to present our allegations, and respectfully solicit determination of violations alleged, including, but

1

not limited, violations to the Truth in Lending Act and to statutes prohibiting wrongful and unfair competition, and the adjudication of economic, as well as emotional damages:

## JURISDICTION

This Honorable Court attains jurisdiction in this case on the following grounds:

1. Complaint is based on a violation of a federal statue. In specific, we refer to a violation of the Truth in Lending Act, 15 USC sec. 1601-1692. There is exclusive Federal Jurisdiction for decisions of it complaints filled under this statute.

2. There is diversity among parties. Plaintiffs are residents of Puerto Rico, while defendants are corporations or subsidiaries incorporated outside of local jurisdiction, in United States and Spain.

3. The claim is for one hundred nine million dollars ($109,000,000.00).

## THE PARTIES

1. ALASKA AIR & SOUND CENTER– Corporation with office at Bo. Quebrada Arriba Carr. #1 Km. 58.9 Cayey, Puerto Rico 00736, telephone number (787) 263-3885, work of the law of the Commonwealth of Puerto Rico, incorporated number 102188 for the year 1998, with employee identification number 66-0556709.

2. WILLIAM F. MCGRAW COLON – of legal age, married with ALMA ROSA MORALES COLON, president of the Corporation, resident of J-1 Las Muesas Development at Cayey, Puerto Rico 00736.

3. ALMA ROSA MORALES COLON, of legal age, married with the president of Corporation, and resident of J-1 Las Muesas Development at Cayey, Puerto Rico 00736.

4. JESUS J. ROSARIO COLON; ARNOLD DAVID ALVARADO; ISRAEL MALDONADO DIAZ, BRENDA LOPEZ MARTINEZ (WIFE) AND SOCIETY

2

CREATED BY PARTIES; RAMON ORTIZ VARGAS, EMMANUEL MARTINEZ DE JESUS, ARLEEN DIAZ APONTE (WIFE), AND SOCIETY CREATED BY PARTIES; JOSE R. SANTIAGO JIMENEZ; MIGUEL ANGEL ROLON RENTAS; MARCOS G. COLON CRUZ; ARNALDO L. MORALES CORREA; REINALDO DAVID BURGOS; JOSE R. ORTIZ VAZQUEZ AND ROLANDO CRUZ ARROYO; group of sales force employee, all of legal age, with the address at Bo. Quebrada Arriba Carr. #1 Km. 58.9 Cayey, Puerto Rico 00736.

5. A group of clients represented by: ANDREA COLÓN BEVERAGGI, REINALDO RODRÍGUEZ BÁEZ, YAHAIRA BARGASARAWARA, WILLIAM ARROFAT, LIZA CRUZ DÍAZ, HÉCTOR CASTRO.

6. BANCO SANTANDER DE PUERTO RICO; with address at PO Box 362589 San Juan Puerto Rico 00936-2589, telephone (787) 777-4100.

7. ISLAND FINANCE, with office at Professional Office Park #4, 998 San Roberto Street, San Juan Puerto Rico 00926 and postal address PO Box 71504 San Juan, Puerto Rico 00936-8604.

8. AMERICAN INTERNATIONAL, with office at Muñoz Rivera 250 Avenue, Hato Rey Puerto Rico, postal address PO Box 10181 San Juan, Puerto Rico 00908-1181.

9. INSURANCE OF NAME "X" (UNKNOWN NAME); will submit when discovery permits it.

10. WELLS FARGO FINANCIAL; with office at 800 Walnut Street, Des-Moines IA 50309-3636.

11. WELLS FARGO FINANCIAL. INSURANCE OF NAME "Y" (UNKNOW NAME); will submit when discovery permits it.

## ALLEGATIONS

1. Alaska Air & Sound Center and Island Finance entered into a Dealer Agreement in year 2000.

2. Island Finance provided a credit program for Alaska's private label, Alaska Credit Card. Balances purchased throughout various years were:

   | Years | Balances |
   |---|---|
   | 2000 | $ 124,536.00 |
   | 2001 | 2,123,994.00 |
   | 2002 | 3,139,891.00 |
   | 2003 | 3,140,977.00 |
   | 2004 | 3,616,061.00 |
   | 2005 | 5,354,986.00 |
   | 2006* | 2,724,491.00 |

3. On the 28th of February 2006 Santander Bank Corporation and Santander Finance acquired assets, operation and <u>some of the liabilities</u> of Island Finance Sales of Puerto Rico from Wells Fargo Corporation. We do not know if there was a sale or a joint venture agreement.

4. Island Finance was a wholly owned subsidiary of Wells Fargo Corporation, and most of the events that are part of this complaint occurred under the ownership of Wells Fargo Corporation.

5. Legal foundation of complaint are established based on violations to:
   a. Article 1802 of Puerto Rico's Civil Code
   b. Truth in Lending Act
   c. Sections 3371-3511 of Puerto Rico's Civil Code
   d. Monopoly Law- Puerto Rico- Law #77 of June 25th 1964
   e. Federal Monopoly Law- 15 USC4 and subsequent
   f. Sherman Act
   g. Clayton Act
   h. Robinson Patman Act

4

6. A credit program for a private label, Alaska Card, was established among parties through a Dealer Agreement. Copy is included as Exhibit I and summary of provisions is as follows:

   a. Alaska Air and Sound Center would market Alaska Credit Card and credit balances would be purchased by Island Finance.
   b. Among requirements for transactions among parties, was the presentation of purchase invoices.
   c. Interest rate and processing fee were established and these were periodically subject to review.
   d. Obligation and responsibilities of parties are outlined.
   e. Procedure for purchase of credit balances and administration of customer use of credit card was outlined.
   f. Commercial agreement among parties was "without recourse". In other words, there was no obligation to repurchase delinquent accounts. (Clause #22 of contract)
   g. Island Finance will have the option of electing which "clients balances" to purchase. For this purpose they analyzed credit capability and quality of Alaska's Clients. Thus, credit evaluation and selection was a responsibility of Island Finance.
   h. Island Finance would also be responsible for the collection process of Alaska credit card balances purchased by them. (Clause #25 of contract)
   i. A notification requirement of thirty (30) days was established for termination of agreement. (Clause #28 of contract)

7. Client base of Alaska's Credit Card holders are an asset of Alaska Air & Sound Center. Dealer agreement does not include the sale of client base, it is extrictly related to the sale of credit balances outstanding. Alaska Air & Sound Center customers did not agree nto receive any possibilities of cross selling from Island Finance.

8. A private action based on violation of the Truth in Lending Act is established through this complaint. Direct impact was received by both, Alaska's customer and Alaska Air & Sound Center.

9. Unjustified credit discrimination was practiced by Island Finance throughout credit evaluation of Alaska Credit Card holders. Dealer agreement provides for credit evaluation of balances to be purchased by Island Finance at their option after analyzing

5

client's financial situation and capability. Nevertheless to avoid discrimination, customers credit quality and capability should have been assed based on their personal data and not, as it was done, on the Dealer's overall client base performance.

10. Credit requirements, as represented by a statistical standard, can not be imposed over a client base or portfolio of a Dealer, when the responsibility of credit extension and collection process resides on the financial institution, acquiring outstanding balances.

11. The "Credit Approval" is made by Island Finance as well as the collection process. In fact, an employee of Island Finance was located or place at Alaska's premises to speed up credit approval process during peak labor days.

12. Alaska Card Holders customers are clients of Alaska, the plaintiff and not of Island Finance. The "Contract of Agreement" is only referred as to the sale of the outstanding balance for each contract, and not to as the sale of client base.

13. Island Finance, the defendant, has been practicing and conducting wrong full and harmful practices in trade. In other words competition was adversely affected, rights were ignored and overall damage resulted, to the both clients and dealer. The behavior that constitutes wrong full practice is:

   a. Using, without consent, the listed customers of Alaska Sound Card to market the products and services of Island Finance.
   b. To deny credit approval submitted by Alaska Sound Card customers and later approving same or higher, credit to that customer by Island Finance.
   c. Approval of credit by Island Finance to cancel balances of accounts of Alaska Card Holders, and in most cases, leaving the Card of Alaska Card Holder inactive.
   d. Using the client base of Alaska Credit Card customers to offer the Island Finance loans. This practice affected and results on an increased of the Debt Ratios for each customer, with its corresponding impact on delinquency and in a dilatory debtor.
   e. The utilization of the client base of Alaska Card Holder as a loan source to convert small outstanding balances on Alaska Credit Card Holders to "fix terms loans" and with competitive overall terms with Island Finance.

    f.    The conversion and appropriation of the client base of Alaska Credit Card Holder to an <u>Island Finance</u> customer.

    g.    To apply a more restrictive credit policies to clients and "Holders of Alaska Card Credit, in such a manner as to create an unjustified deviation from General Credit policies.

14. Unfair commercial practices described in the preceding section, produced damages to properties, business, and emotional stability of plaintiff. With respect to sales employees, whose salary depends on commission, practices described, adversely affected their income sources.

15. Island Finance Sales office of Puerto Rico, had the mission of providing volume of clients to Wells Fargo for implementation off "cross sales strategies".

16. Island Finance is well known as the leader in the sector of providing credit cards programs thru Dealer Agreements.

17. The unfair commercial practices observed in the behavior of Island Finance were designed and implemented deliberately, with the principle purpose of acquiring using, maintain or preserved monopolistic power.

18. Banco Santander of Puerto Rico acquired Island Finance Sales of Puerto Rico with the special objective and task of complementing Bank Commercial nitches that facilitate market penetration.

19. Island Finance, through various officials and executives, have been acting and producing, harms and stress to the Commercial Image and reputation of the Plaintiff. They have created "informal collusion agreements", with and among, other financial institutions to limit access to credit programs for private labels.

20. The market that has been unreasonably restricted by the actions described is the one of the credit programs available for private labels directed to the acquisition of goods and services within an average balances between $1,000.00 and $3,000.00.

21. Island Finance did not comply with the requirement of 30 days notification the effective date of cancellation of contract. This action yield and or resulted in loss of sales equivalent to 40% of monthly average results.

22. The market value of Alaska Air & Sound Center, was estimated in 30 (thirty) millions dollars. Island Finance. behavior attempted to destroy the life and existence of Alaska Air & Sound Center Businesses.

23. Island Finance behavior yielded an overall sales reduction of 40% to Alaska Air & Sound Center. In addition, up to this moment, the lost in income derive from commission, for the staff / employees in the sales department, has been estimated to approximate $120,000.00.

24. Damages claimed by group of clients have not been estimated at this point. The possibility of converting action to a class action will be explored.

25. The value of the Image and Business reputation of the Company, Alaska Air & Sound Center, is immense, and it is not possible to precise. Compensation is to be determined by this Honorable Court.

26. Unfair competition, as it has been described in this case, is a modality of a violation to Monopoly Law, Commonly known as Sherman Act, Clayton Act and Robinson Patman Act. The Law establishes punitive sanctions for compensation arising under these claims. Thus, compensation required will represent three times the damages award by this Court.

27. A group of clients is included as part of this action with express possibility of converting the case to a class action suit.

28. Credit discrimination affected, directly, customers of Alaska Sound &

**GIVEN OUR EXPRESSED ALLEGATIONS**, we respectfully request from this Honorable Court to accept our Complaint, determine violation to Law and award requested damage of ONE HUNDRED NINE MILLION DOLLARS, as well as any other provision established by law.

**SUBMITTED** today, of February 6th, 2007 at the Federal Court.

**MARICARMEN MÁRQUEZ COLÓN, ESQ.**
License number 2153006
X3 Muñoz Marin Avenue, Caguas, PR 00725
Telephone Numbers (787) 286-6184 and 413-4281
e-mail:marquez@prtc.net